RECEIVED
USDC, WESTERN DISTRICT OF LA.
TONY R. MOORE, CLERK
DATE 8/28/14
BY DM

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO: 07-60037 (02) |
| VERSUS | JUDGE DONALD E. WALTER |
| BOUNTHONG XAPHILOM | MAGISTRATE JUDGE HILL |

### MEMORANDUM ORDER

Before the Court is a Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence filed by the Defendant, Bounthong Xaphilom ("Xaphilom"). [Doc. #487]. The Government opposes this motion. [Doc. #501]. For the reasons set forth below, Xaphilom's motion is hereby **DENIED**.

### BACKGROUND FACTS

Xaphilom's conviction stems from a multi-defendant indictment regarding a methamphetamine drug operation operating from areas surrounding New Iberia, Louisiana to Los Angeles, California. Xaphilom was charged with one count of conspiracy to possess with intent to distribute methamphetamine, in violation of 21 U.S.C. § 846, along with his co-defendants Arthur Basaldua, Duc Huu Pham, Israel Perez, Eng Champkungsing, Phanut Phonchinda, Travis Joseph, Sammy Thibodeaux, Christopher Aucoin, and Misay Chandakham [Doc.#3]. Attorney Gerald Block was appointed to represent Xaphilom. [Doc. #68]. Xaphilom entered a plea of not-guilty and proceeded to trial. After a seven day jury trial, the jury returned a guilty verdict against the four remaining defendants. [Doc. #250]. The court sentenced Xaphilom to 210 months imprisonment, which was at the bottom of recommended guideline. [Docs. #337]. The Fifth Circuit Court of Appeals affirmed Xaphilom's conviction and sentence. [Doc. #466].

## LAW AND ANALYSIS

A Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 allows a defendant to challenge only jurisdictional and constitutional issues, and rare non-jurisdictional errors not raised on appeal, which could result in a "complete miscarriage of justice". *United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998). A claim of ineffective assistance of counsel is properly considered under section 2255.

A defendant has a constitutional right to assistance of counsel guaranteed by the Sixth and Fourteenth Amendments. It has long been understood that the right to counsel includes the right to effective assistance of counsel. *See McCann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). Absent effective assistance of counsel a "serious risk of injustice infects the trial itself." *Cuyler v. Sullivan*, 446 U.S. 335, 343 (1980). Thus, a defendant who receives ineffective assistance of counsel has been deprived of his constitutional right to counsel.

To prevail on a claim of ineffective assistance of counsel the defendant must demonstrate that (1) his attorney's performance falls below an objective standard of reasonableness, and (2) that his attorney's ineffective performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668 (1984); *Bryant v. Scott*, 28 F.3d 1411, 1414-1415 (5th Cir. 1994). Under the first prong of the *Strickland* analysis a court should presume that the attorney's actions are encompassed within the wide range of reasonable competence, and fall under the ambit of trial strategy. *Strickland*, 466 U.S. at 687. The defendant may overcome this presumption by showing that under the "totality of the circumstances" the attorney's performance was "outside the wide range of professionally competent assistance". *Id.* at 690. The second prong of the *Strickland* test requires that the defendant show

"that there is a reasonable probability that, but for counsel's specified errors, the result of the proceeding would have been different." *Murry v. Maggio,* 736 F.2d 279, 282 (5th Cir. 1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694.

If the defendant fails to establish either prong of the *Strickland* test his claim for ineffective counsel must fail. *See Tucker v. Johnson,* 115 F.3d 276, 280 (5th Cir. 1997); *Bryant,* 28 F.3d at 1415. The prongs of the test need not be analyzed in any particular order. *Goodwin v. Johnson,* 132 F.3d 162, 172 n.6 (5th Cir. 1998); *Murray,* 736 F.2d at 282.

Xaphilom alleges that his appointed trial attorney was ineffective for the following reasons: (1) Mr. Block failed to inform him of plea options and their respective benefits, (2) Mr. Block failed to properly advise him about the importance United States Sentencing Guidelines and their potential affect on his sentence, (3) Mr. Block failed to communicate a plea offer from the government, and (4) because Mr. Block failed to advise him of the potential benefits a plea agreement would have with regard to sentencing (acceptance of responsibility), Xaphilom chose to proceed to trial. [Doc. #487]. Thus, Xaphilom argues that due to ineffective counsel his decision to proceed to trial was unintelligent and uninformed. *Id.*

Xaphilom provides an affidavit setting forth his version of events. *Id.* He describes a meeting with Mr. Block regarding the possibility of a plea in his affidavit as follows:

> I then asked Mr. Block "what are we looking at? What sentence am I looking at." "Well, with the 1,031 grams of methamphetamine from the 2002 conviction as set forth as an overt act, you're looking at a sentence of 10 years to life if you're found guilty after a jury trial. I could seek a plea bargain with the government if you like, but in all likelihood you would still be facing a sentence of 10 to life given the drug amounts they are attributing to you. My response to this was "so, I'm looking at 10 to life whether I plea bargain or if I'm found guilty after a jury trial?" Mr. Block

3

>simply said "that is correct". I then stated "well, I'll just take my chances on a jury trial. At least if I win I can go home or if I lose I'll do an appeal." After these comments Mr. Block told me that he would prepare for trial.

*Id.*, Ex. A. Xaphilom contends that he decided to go forward with a jury trial instead of a plea bargain because Mr. Block left him with the impression that there was nothing to gain by plea bargaining.

Xaphilom maintains that he does not recall Mr. Block ever speaking to him about the role the United States Sentencing Guidelines would play in his sentence until after he was found guilty and received a copy of his pre-sentence report ("PSR"). Xaphilom claims he did not know anything about a three point reduction for acceptance of responsibility until he entered the federal prison system. *Id.* Xaphilom contends that he suffered prejudice because if he had known about the three point reduction he would have entered a plea of guilty, with or without a plea bargain from the government. *Id.*

Most seriously, Xaphilom alleges that Mr. Block never told him that a plea offer had been communicated and that he was completely unaware of the proposed plea agreement until he received certain documents via a Freedom of Information Act request. *Id.* Xaphilom also attaches a letter from Mr. Block dated October 12, 2010, wherein Mr. Block states that he never tendered an offer to Xaphilom because Xaphilom made it clear to him that he would not consider a plea agreement. *Id.*

In response to Xaphilom's motion, the government obtained an affidavit from Mr. Block to address the allegations. [Doc. #501-2]. Mr. Block acknowledges that when he was contacted by Xaphilom he incorrectly stated that a plea had not been offered, in part because he answered the letter without retrieving Xaphilom's file which had been sent to an off-site storage facility. *Id.* However, upon review of the file in question Mr. Block did recall discussing the possibility of

4

entering a plea with Xaphilom. *Id.* Moreover, Mr. Block's attorney time sheets and his file reflect that he had numerous discussions with the defendant about pleading guilty. *Id.*

Mr. Block states that he first discussed the possibility of a plea on October 31, 2007, but that Xaphilom made it clear to him at that time that he would not consider a plea because he was convinced that he was innocent of the charges brought by the government. *Id.* Mr. Block states that on November 10, 2008, he met with the government to discuss the possibility of Xaphilom pleading guilty. *Id.* Thereafter, on November 13, 2008, Mr. Block met with Xaphilom and his girlfriend to discuss whether Xaphilom would enter a plea and cooperate with the government against the remaining defendants. *Id.* Mr. Block states that Xaphilom indicated that he wished to proceed to trial. *Id.*

On November 19, 2008, Mr. Block received a plea packet from the government. *Id.* Mr. Block states that on the same day he wrote Xaphilom a letter confirming Xaphilom's earlier decision not to enter a plea, and forwarding the government's written plea offer. *Id.* In the same letter Mr. Block instructed Xaphilom to carefully review the plea packet and advise him whether he wished to enter a plea or go to trial. *Id.* Mr. Block states that on December 19, 2008, he advised Xaphilom by letter that individuals from the conspiracy (Basaldua, Perez, Champkungsing, and Joseph) had decided to plead guilty, and that Perez provided adverse information against him to the government. *Id.* The letter requested that Xaphilom advise Mr. Block of any desire to change his plea as soon as possible. *Id.*

The affidavit and documentary evidence provided by Mr. Block to the court is sufficient for this court to conclude that the proposed plea agreement was in fact provided to Xaphilom and that counsel discussed the possibility of changing his plea. Mr. Block's affidavit supports a finding that

5

a potential plea was discussed, especially in light of the fact that co-conspirators were entering pleas and at least one was willing to offer adverse testimony against Xaphilom. Despite these communications, it is Mr. Block's testimony that Xaphilom refused to consider any plea offers from the government and chose to proceed to trial.

  Xaphilom has also failed to demonstrate that Mr. Block was ineffective for allegedly failing to discuss the importance of the United States Sentencing Guidelines. Xaphilom maintains that he would have pleaded guilty if he had known that his state sentence would run concurrently with his federal sentence. Xaphilom claims that his attorney gave him the impression that he would be "double punished" for the quantity of methamphetamine from his 2002 state conviction. As the PSR indicates, the court did hold Xaphilom responsible for the methamphetamine associated with his 2002 state arrest as predicted by Mr. Block. However, the court provided Xaphilom with credit for time served beginning February 26, 2002. The court cannot find counsel to be ineffective for properly predicting that the court would consider the methamphetamine associated with his 2002 state conviction.

  Finally, Xaphilom maintains that his counsel was ineffective for failing to communicate the possibility of a three point reduction in his sentence for accepting responsibility and entering a guilty plea. The government correctly notes that the proposed plea agreement provided to Xaphilom by Mr. Block states that if he had entered a guilty plea the government would not oppose a credit for acceptance of responsibility or sentencing at the bottom of the guideline range.

  Based on the filings in the record, the court cannot find that Mr. Block failed to provide Xaphilom with effective assistance of counsel. It is clear that Mr. Block discussed the possibility of a plea with Xaphilom on numerous occasions, but Xaphilom opted to proceed to trial.

## CONCLUSION

For the foregoing reasons, Xaphilom's Motion to Vacate, Set Aside, or Correct his Sentence pursuant to 28 U.S.C. § 2255 [Doc. #487] is hereby **DENIED**.

**THUS DONE AND SIGNED**, this _21_ day of August, 2014.

DONALD E. WALTER
UNITED STATES DISTRICT JUDGE